UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC.,
as Broadcast Licensee of the August 12, 2006
Rahman/Maskaev Program,

                    Plaintiff,                    **MEMORANDUM and ORDER**

      -against-

                                                          06-CV-6101 (SLT)(MDG)

RENE SPAR, Individually and d/b/a RENES
DISTINCTIVE HAIR DESIGNS a/k/a RENE'S
HAIR, and RENES DISTINCTIVE HAIR
DESIGNS a/k/a RENE'S HAIR,

                      Defendants.
----------------------------------------------------------------x
**TOWNES, United States District Judge:**

       Plaintiff, J & J Sports Productions, Inc. ("Plaintiff"), contracted for the right to exhibit the telecast of a August 12, 2006 boxing match, including "all undercard bouts and the entire television broadcast" (collectively, the "Event") via closed-circuit television and encrypted satellite signals. Complaint ("Compl.") ¶ 15. In November 2006, Plaintiff commenced this action pursuant to two sections of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553 and 605, alleging that defendants, Rene Spar, individually and d/b/a Renes Distinctive Hair Designs a/k/a Rene's Hair, and Renes Distinctive Hair Designs a/k/a Rene's Hair (collectively, "Defendants"), intercepted, received, and/or de-scrambled Plaintiff's satellite signal without authorization, and exhibited the Event to patrons at Renes Distinctive Hair Designs a/k/a Rene's Hair (the "Establishment"). *Id*. ¶¶ 15-24, 32-36. In addition, Plaintiff alleges that Defendants violated 47 U.S.C. § 605(e)(4) by knowingly modifying a device or utilizing equipment to decrypt a satellite cable programming or direct-to-home satellite services without authorization. *Id*. ¶¶ 26-30.

       Process was served upon Defendants via personal service upon Rene Spar, as an individual and as an officer of Renes Distinctive Hair Designs a/k/a Rene's Hair. Having failed

to timely file an answer or otherwise respond to the complaint, on March 22, 2006, Defendants' default was entered by the Clerk of the Court. Now, Plaintiff moves for a default judgment against Defendants, only seeking relief under § 605(a). In particular, Plaintiff seeks statutory damages "up to" $10,000.00, enhanced damages "up to" $100,000.00, and costs and attorneys' fees in the amount of $1,305.25.[1] For the reasons set forth below, Plaintiff's motion is granted and judgment shall be entered in the amount of $8,305.25.

## A.     *The Consequences of Defendants' Default*

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992); *see also Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998). Accordingly, by defaulting in this case, Defendants have conceded, *inter alia*, that they willfully violated 47 U.S.C. §§ 553 and 605.[2] Compl. ¶¶ 25, 37; *see also Entertainment by J&J, Inc. v. Mama Zee Restaurant & Catering Services, Inc.*, No. CV-01-3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21,2002) (Report and Recommendation of Gold, M.J.) (finding that, with facts similarly asserted here, "plaintiff's

---

[1] Although Plaintiff's Notice of Motion and a section of Plaintiff's "Attorney's Affidavit of Costs and Fees" requests $652.62 in costs and attorneys' fees, the itemized listing of costs and attorneys' fees total $1,305.25 so the Court will only consider the request supported by the itemized amounts.

[2] Although Plaintiff also asserts a claim under § 605(e)(4), this Court declines to award Plaintiff any relief under that statute since very similar allegations have been held to be insufficient to create liability under § 605(e)(4). *See, e.g., Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 7, 2005) (Report and Recommendation of Matsumoto, M.J.). As the *Morales* Court noted, "several district courts have recognized [that] . . . § 605(e)(4) . . . is aimed at upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Id.* (internal quotation marks and citations omitted). Allegations of the sort contained in Plaintiff's pleadings do not support a finding that Defendants were "more than 'ultimate consumers' or 'end users' of an illegally modified device, as opposed to 'upstream manufacturers and distributors' of such a device" and, therefore, provide an insufficient factual basis for finding liability under § 605(e)(4). *Id.* (internal citations omitted)

complaint clearly establish[ed] the elements of liability required to state claims under both Section 553(a)(1) and Section 605(a).").

Although Defendants have admitted liability under both § 605 and § 553, Plaintiff "can recover under only one statute." *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 CV 1042, 2006 WL 728408, at *1 (S.D.N.Y. Mar. 20, 2006) (Report and Recommendation of Ellis, M.J.) (citing *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)). Plaintiff has explicitly elected to recover only under § 605(a), *see* Plaintiff's Memorandum of Law ("Plaintiff's Memo"), p. 4,[3] so this Court will determine the damages recoverable under that statute.

## B. *Damages Under § 605(a)*

Section 605(e) provides, *inter alia*, that any person aggrieved by a violation of § 605(a) can bring a civil action in district court, in which the court:

> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of . . . [§ 605(a)];
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). Subparagraph (C) permits the recovery of either actual damages under (C)(i)(I), or statutory damages under (C)(i)(II). Plaintiff expressly requests that this Court award it statutory damages. *See* Plaintiff's Memo, p. 4.

The statutory damages provision, § 605(e)(3)(C)(i)(II), provides, in pertinent part:

---

[3] Plaintiff's Memorandum of Law does not contain page numbers so the Court will reference the pages therein according to their sequential order.

> [T]he party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .

In addition, § 605(e)(3)(C)(ii) states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [§ 605(a)] . . . .

Although § 605 provides little guidance as to how to set damages within the statutory range, "courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events." *Morales*, 2005 WL 2476264, at *6 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999)). First, in cases where the exact number of patrons is unknown, courts have awarded flat sums based on what the court "considers just." *See*, *e.g.*, *Entertainment by J & J, Inc. v. Suriel*, No. 01 Civ. 11460, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000.00 in statutory damages); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000.00 in statutory damages).

Second, "[i]n cases where there is uncontradicted evidence of the number of patrons viewing the match in the establishment, courts have . . . multiplied the number of patrons by a set sum," and have awarded that amount "plus any cover charges or other profits attributable to the unauthorized viewing." *Morales*, 2005 WL 2476264, at *6. Although the "set sum" varies widely, with some courts awarding as little as $20.00, *see Time Warner Cable v. Sanchez*, No. 02 Civ. 5855, 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003), and some courts awarding as much as $300.00, *see Garden City Boxing Club, Inc. v. Salcedo*, No. 04 Civ. 5027, 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005), many courts have found $50.00 to be the appropriate

4

amount.  *See*, *e.g.*, *Mama Zee Rest.*, 2002 WL 2022522, at *3; *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 490; *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997); *Cablevision Sys. Corp. v. 45 Midland Enter., Inc.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994).

Plaintiff urges the Court to follow *Garden City Boxing Club, Inc. v. Bello*, No. CV-05-1300, 2005 WL 2496062 (E.D.N.Y. Sept. 20, 2005), a case in which statutory damages were calculated by multiplying the capacity of the establishment by the price an individual would pay to view the event at home (*i.e.*, the "residential price").  In reliance upon *Bello* and the affidavit of Thomas Larkin, an "independent auditor," that estimates that the Establishment had a capacity of 30 people – *see* Affidavit of Thomas A. Larkin, sworn to September 6, 2006 ("Larkin Aff."), annexed to the Affidavit of Joseph Gagliardi, sworn to March 15, 2007 ("Gagliardi Aff."), as Exh. C. – Plaintiff requests this Court to award statutory damages in an amount "no less than the capacity of the establishment, 30[,] times $50.00 or $54.95[, the residential price,] or at least $1,648.50."  Plaintiff's Memo, p. 6.

However, this Court declines to adopt the approach used in *Bello*.  As this Court previously stated in *J & J Sports Productions, Inc. v. Guerra* – a case involving the same plaintiff and attorney – "[t]he *Bello* approach, which is based on the recognition that 'it is entirely possible' the establishment filled to capacity after plaintiff's auditor left is somewhat speculative."  No. 06 CV 3382, 2007 WL 539142, at *3 (E.D.N.Y. Feb. 16, 2007) (TOWNES, J.) (quoting *Bello*, 2005 WL 2496062, at *3); *see also Garden City Boxing Club, Inc. v. Puebla's Grocery, Inc.*, No. 06-CV-4735, 2007 WL 4243219, at *4 n.3 (E.D.N.Y. Nov. 29, 2007) (Report and Recommendation of Levy, M.J.) ("this analysis [is] speculative and [the Court] hold[s] the plaintiff responsible for supporting its request with evidence concerning the actual number of patrons who were present when the Event was shown.").  As such, this Court declines to award

Plaintiff an amount based upon the Establishment's speculated capacity, and will instead premise Plaintiff's award on the number of patrons actually observed viewing the Event, which Plaintiff has also included in its submission. Mr. Larkin, while visiting the Establishment around 11:24 p.m., states that he personally observed ten (10) people viewing the Event. Gagliardi Aff. ¶ 7, Exh. C. In addition, Plaintiff has introduced evidence that the residential price for viewing the Event was $54.95. Gagliardi Aff. ¶ 9B. However, if this Court simply multiplies the number of patrons, 10, by the "residential price" of $54.95, the award would be only $549.50. Since this is less than the statutory minimum of $1,000, this Court awards plaintiff statutory damages in the amount of $1,000.

Plaintiff is also entitled to enhanced damages. It is beyond question that the § 605(a) violation "was committed willfully and for purposes of direct or indirect commercial advantage." 47 U.S.C. § 605(e)(3)(C)(ii).[4] After all, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Googies Luncheonette*, 77 F. Supp. 2d at 490. However, in awarding enhanced damages, courts have borne in mind that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006).

Here, it is apparent that Defendants operate a small business since, according to Mr. Larkin's affidavit, the Establishment had only ten (10) patrons at the time of his visit to the

---

[4] Some jurists in this district have refused to grant Plaintiff any enhanced damages in similar circumstances because the respective defendants may have accidently, through the cable provider's error, been subscribed to residential cable service rather than commercial cable service, thereby calling into question the willfulness of their activities. *See J&J Sports Productions, Inc. v. Louisias*, No. 06-CV-339, 2006 WL 1662608, *4 (E.D.N.Y. May 16, 2006). However, with Defendants' defaulting in this case, this Court declines to speculate upon the nature of Defendant's violation of § 605(a).

premises, and it has an estimated capacity of thirty (30) people.  In addition, since Plaintiff has not offered any evidence that Defendants charged cover charges, advertised the Event's showing, or displayed the Event from more than one television, whatever profits Defendants reaped from their misdeeds were likely minimal.  *See Taco Rapido Rest.,* 988 F. Supp. at 111-12.  Thus, an award of $6,000.00 in enhanced damages – six times the amount of statutory damages – should more than suffice to prevent them from repeating their conduct.  *See Googies Luncheonette*, 77 F. Supp. 2d at 491 (awarding enhanced damages of $3,000, three times the base award, against defendant with no record of any other theft of cable services or other intellectual property); *see also Broadcast Music, Inc. v. R Bar of Manhattan, Inc.,* 919 F. Supp. 656, 660 (S.D.N.Y.1996) (increase of five times the base award for willful acts).

C.     *Attorneys' Fees and Costs*

Section 605(e)(3)(B)(iii) expressly provides that a court "shall direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails."  Relying on this language, courts in this Circuit have repeatedly held that "under Section 605 the award of costs and attorneys' fees is mandatory."  *Polanco*, 2006 WL 305458, at *4; *see also Morales*, 2005 WL 2476264, at *9.  However, a party seeking attorneys' fees must nonetheless "support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done."  *Morales*, 2005 WL 2476264, at *9 (internal quotations and citations omitted).

Here, Plaintiff's counsel has provided the required documentation.  In her Affidavit of Costs and Fees, Plaintiff's counsel has provided time records that substantiate her claim that she expended 3.12 hours, and her paralegal expended 1.75 hours in connection with this litigation.

7

Affidavit of Julie C. Lonstein, Esq., sworn to March 6, 2007 ("Lonstein Aff.") ¶ 4. This Court has reviewed the time records and finds the total of 4.87 hours spent on this case to be entirely reasonable. In addition, although Plaintiff's counsel has not attached a copy of her curriculum vitae, this Court is aware that she is very experienced in handling these types of cases. Plaintiff's counsel's fee of $200.00 per hour is justified, given her qualifications, and this hourly rate is within the range awarded in this district, *see Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050, 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006). Accordingly, Plaintiff is awarded attorneys' fees totaling $755.25.

Plaintiff also seeks to recover the costs it has expended during this litigation, comprising of $350.00 in filing fees and $200.00 for service of process, for a total of $550.00. These costs are reasonable. *See El Norteno Rest.*, 2007 WL 2891016, at *5. Accordingly, Plaintiff is awarded attorneys' fees and costs, totaling $1,305.25.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for a default judgment is granted. Defendants Rene Spar, individually and d/b/a Renes Distinctive Hair Designs a/k/a Rene's Hair, and Renes Distinctive Hair Designs a/k/a Rene's Hair shall be jointly and severally liable to Plaintiff for $1,000.00 in statutory damages pursuant to § 605(e)(3)(C)(i)(II); $6,000.00 in enhanced damages pursuant to § 605(e)(3)(C)(ii); and $1,305.25 in attorneys' fees and costs. Accordingly, the Clerk of Court is directed to enter judgment in favor of Plaintiff in the total amount of $8,305.25.

SO ORDERED.

Dated: Brooklyn, New York
February 1, 2008

Affidavit of Julie C. Lonstein, Esq., sworn to March 6, 2007 ("Lonstein Aff.") ¶ 4. This Court has reviewed the time records and finds the total of 4.87 hours spent on this case to be entirely reasonable. In addition, although Plaintiff's counsel has not attached a copy of her curriculum vitae, this Court is aware that she is very experienced in handling these types of cases. Plaintiff's counsel's fee of $200.00 per hour is justified, given her qualifications, and this hourly rate is within the range awarded in this district, *see Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050, 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006). Accordingly, Plaintiff is awarded attorneys' fees totaling $755.25.

Plaintiff also seeks to recover the costs it has expended during this litigation, comprising of $350.00 in filing fees and $200.00 for service of process, for a total of $550.00. These costs are reasonable. *See El Norteno Rest.*, 2007 WL 2891016, at *5. Accordingly, Plaintiff is awarded attorneys' fees and costs, totaling $1,305.25.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for a default judgment is granted. Defendants Rene Spar, individually and d/b/a Renes Distinctive Hair Designs a/k/a Rene's Hair, and Renes Distinctive Hair Designs a/k/a Rene's Hair shall be jointly and severally liable to Plaintiff for $1,000.00 in statutory damages pursuant to § 605(e)(3)(C)(i)(II); $6,000.00 in enhanced damages pursuant to § 605(e)(3)(C)(ii); and $1,305.25 in attorneys' fees and costs. Accordingly, the Clerk of Court is directed to enter judgment in favor of Plaintiff in the total amount of $8,305.25.

SO ORDERED.

Dated: Brooklyn, New York
February 1, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge